## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LOU LOIBEN'S PERSONALITIES, INC.,    )
    )
    Plaintiff,    )
    )    Case No. 15 CV 1511
    vs.    )
    )
    )
AKIB KHANANI (a/k/a "DJ Akib", a/k/a "DJ    )
Akib Entertainment")    )
    )
    Defendant.

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, Lou Loiben's Personalities, Inc. ("Personalities"), for it's complaint against defendant Akib Khanania a/k/a "DJ Akib" a/k/a "DJ Akib Entertainment" ("Defendant"), states as follows:

### Nature of Claim

1.    Personalities seeks relief to redress Defendant's unauthorized use of Personalities' trade secrets, Defendant's unauthorized use and distribution of Personalities' copyrighted images, and Defendant's false and misleading representations regarding his continued affiliation with Personalities or sponsorship or approval by Personalities.

2.    Personalities is a boutique DJ entertainment business that handles corporate and private events. Defendant was an employee of Personalities from February 2011 until February 4, 2015, when Defendant abruptly resigned.

3.    When Defendant left Personalities' employ, he misappropriated Personalities' trade secrets to establish his own business that directly competed against Personalities in the fashion industry. In addition, Defendant used copyrighted photographs from events he worked

while employed by Personalities to promote his new business on his new website and on social media sites (including Facebook and Instagram).

4.      Personalities faces devastating consequences and irreversible reputational harm if Defendant continues to misappropriate such intellectual property and intangible assets.

### Jurisdiction and Venue

5.      This Court has original jurisdiction over the copyright claims (under 17 U.S.C. § 101, *et seq.*) in Count  I and the Lanham Act claims (under 15 U.S.C. § 1125) in Count III pursuant to 28 U.S.C. § 1331 and 1338.

6.      This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the state law claims set forth in Counts II, IV and V.

7.      Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

### Parties

8.      Personalities is a disc jockey ("DJ") entertainment company that provides high-end entertainment for its clients.  It specializes in developing custom productions for social, school, corporate, fundraising and fashion events.  Personalities also produces music and music videos for its corporate clients.  It is an Illinois corporation with its principal place of business in Northbrook, Illinois.

9.      Defendant Akib Khanani a/k/a "DJ Akib" a/k/a ""DJ Akib Entertainment" is an individual residing in Streamwood, Illinois.  Defendant is a DJ who claims to provide his services nationwide, including: Chicago, Las Vegas, California, Florida, and New York.

### Factual Allegations

10.     Personalities is a small, individually-owned, boutique company that has been a leader in the high-end DJ entertainment business for both corporate and private events since 1995.  It hosts hundreds of events each year for its clients.

11.     In 2010, Personalities commenced a focused effort to enter the lucrative fashion-show business in Chicago.  Fashion shows were important to Personalities not only because of their profitability but also because they typically attract Personalities' target clientele.

12.     Personalities initially concentrated on a appealing to a limited number of its corporate clients in the fashion industry, such as Macy's.  Although Personalities was successful in attaining a toehold in the fashion-show market, the market was difficult to enter because of the unique and significant eccentricities and requirements of fashion show producers, clothing designers, modeling agencies, and fashion houses.  Knowing and being able to cater to all of these specialized needs was key to capturing and maintaining business in the Chicago fashion-show market.

13.     For that reason, the Chicago fashion-show industry was dominated for more than thirty years by a single company:  Avmar, Inc. d/b/a/ Sound Machine ("Sound Machine").

14.     In May of 2012, Personalities acquired Sound Machine, including all of its intellectual property.  In connection with the acquisition, Personalities obtained, *inter alia*, the following trade secrets that Sound Machine developed over thirty years of effort and that is crucial to maintaining dominance in the Chicago fashion-show industry:

      a.   current and past Sound Machine client lists and profiles;

      b.   preferred music and playlists for such clients;

    c.   other specialized requirements of those clients (*e.g.*, preferred set-ups, equipment, etc.);

    d.   scripts for past shows; and

    e.   financial information about the clients, including past contracts.

15.    Personalities kept these trade secrets confidential within its organization, providing such information to employees on a need-to-know basis and emphasizing to its employees who obtained any such information the importance of keeping it confidential.  All of the information was kept on a password-protected computer system.

16.    From May 2012 through the beginning of February 2015, Personalities maintained Sound Machine's control over the Chicago fashion-show industry.

17.    Lou Loiben, Personalities' owner, initially maintained the trade-secret information exclusively within his control.

18.    On February 4, 2011, Defendant became an employee of Personalities.

19.    Beginning in mid-2012, Mr. Loiben appointed Defendant as his primary DJ to lead Personalities' fashion-show business. In that capacity, Mr. Loiben divulged to Defendant certain Sound Machine clients, their preferred music and playlists, other specialized requirements of those clients, scripts for past shows for those clients, client budgets and bidding techniques, and Sound Machine's advanced music theory for fashion shows.

20.    Mr. Loiben advised Defendant that such information was confidential and should not be disclosed to anyone because it represented business secrets that the company expended significant time, money and effort to develop.  Defendant agreed to maintain the secrecy of the information.

21.     In addition to Defendant's primary DJ responsibilities, Personalities tasked Defendant with taking photographs and videos at the fashion events to promote Personalities on the Internet and through social media sites.

22.     At the time Personalities hired Defendant, Defendant did not have any contacts or experience in the fashion industry.

23.     Fashion shows occur in Chicago during two distinct timeframes:  the Spring fashion-show season begins in mid-February and runs through May; the Fall season begins in August and runs through November.

24.     At the beginning of February 2015, Personalities fashion-show clients already had advised Personalities of their Spring 2015 show dates but, as was customary in past years, had not yet formally contracted with Personalities for those dates.

25.     On February 4, 2015, Defendant sent Mr. Loiben a text resigning from his position without notice.  Defendant stated that he decided to leave Personalities and "branch off and do [his] own thing. . . . "  He further stated that "it's been a pleasure working with [Personalities] over the past few years" and that "[he has] learned a lot from" his association with Personalities.

26.     Immediately thereafter, Defendant began contacting Personalities' clients and informing them that they should book their fashion shows directly through him rather than booking through Personalities.

27.     Defendant even currently touts Macy's – one of Personalities' clients – as one of his corporate clients on his website, located at http://www.djakib.com/.

28.     Defendant used Personalities' confidential client list to contact the fashion-show producers and used his knowledge of Personalities' other trade secrets to sell his ability to service these clients.

29.     To promote his experience in the fashion-show industry, Defendant has posted on his website (www.djakibentertainment.com) and other social media sites (including Facebook and Instagram) copyrighted photographs and videos from events that he worked as an employee of Personalities, including photos from events produced for Macy's, Fashion Outlets of Chicago, the Debi awards, the Gold Coast fashion show, and various Merchandise Mart (MMPI) shows (the photos are attached hereto as a Group Exhibit A and are referred to herein collectively as the "Personalities' Copyrighted Photos").

30.     Personalities holds the copyright to the Personalities' Copyrighted Photos.

31.     On February 18, 2015, Personalities filed with the United States Copyright Office an application to register the copyright in the Personalities' Copyrighted Photos, Case No. 1-2152634477. A true and correct copy of the Copyright Application is attached as Exhibit B.

32.     Personalities has never given Defendant permission to use the Personalities' Copyrighted Photos.

33.     Defendant also recently posted the Personalities' Copyrighted Photos on various web sites and social media accounts with the hashtag #personalities and #personalitiesinc, making false and/or misleading representations to the fashion-show producers and others regarding his continued affiliation with Personalities or sponsorship or approval by Personalities.

34.     Personalities faces devastating financial ruin and the loss of its long-standing clients if Defendant is permitted to continue misappropriating Personalities' copyrights and trade secrets and trade off Personalities' good name.   Personalities further faces irreversible

reputational harm in the fashion industry if Defendant continues to misappropriate such intellectual property and intangible assets.

### COUNT I
### VIOLATION OF COPYRIGHT ACT
### (17 USC §101, *et seq.*)

35.     Plaintiff repeats, realleges, and incorporates by reference Paragraphs 1 through 34 above.

36.     Personalities owns all right, title and interest in and to the Personalities' Copyrighted Photos and has standing to sue for enforcement of that copyright.  From the date of creation through the date of filing, Personalities complied in all respects with the Copyright Act.

37.     Defendant has infringed, and is continuing to infringe, upon Personalities' copyright in the Personalities' Copyrighted Photos by copying, preparing a derivative work, reproducing, distributing, contributing to and participating in the unauthorized copying and distributing of the Personalities' Copyrighted Photos.

38.     Personalities did not authorize, permit, consent, or license Defendant's distribution, use or reproduction of the Personalities' Copyrighted Photos.

39.     Defendant has infringed on Personalities' exclusive rights by:

   a.   Reproducing the reproduce the works in copies, in violation of 17 U.S.C. §§ 106(1);

   b.   Preparing derivative worked based on the copyrighted work, in violation of 17 U.S.C. §§ 106(2); and

   c.   Displaying the copyrighted work publicly, in violation of 17 U.S.C. §§ 106(5).

40.     Defendant's acts of infringement were done, and now continue to be done, with knowledge that such actions constitute an infringement of Personalities' exclusive rights and are,

therefore, willful within the meaning of 17 U.S.C. § 504(c)(2). At a minimum, Defendant acted in reckless disregard of Personalities' copyright.

41.     As a direct and proximate result of Defendant's actions, Defendant is liable to Personalities for willful copyright infringement under 17 U.S.C. § 501. Personalities is entitled to damages and Defendant's profits in an amount to be proven at trial, which amount is not currently ascertainable.

42.     Alternatively, Personalities is entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504.

43.     Personalities further is entitled to recover its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

44.     As a direct and proximate result of the foregoing acts and conduct, Personalities has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant will continue to infringe Personalities' rights in the Personalities' Copyrighted Photos. Personalities is entitled to a temporary retraining order and to preliminary and permanent injunctive relief.

## COUNT II
## VIOLATION OF THE ILLINOIS TRADE SECRET ACT
### (765 ILCS 1065/1, *et seq.*)

45.     Personalities repeats, realleges, and incorporates by reference Paragraphs 1 through 44 above.

46.     Personalities' current and past fashion-industry client lists and profiles, preferred music and playlists for such clients, other specialized requirements of those clients (e.g.,

preferred set-ups, equipment, etc.), scripts for past shows for those clients, and financial information about the clients, including past contracts, all constitute trade secrets pursuant to 765 ILCS 1065/2(d) (the "Trade Secrets").

47.     Personalities preserved the Trade Secrets sufficiently confidential to maintain their secrecy and/or confidentiality.

48.     Personalities derives significant economic value, actual and potential, from those Trade Secrets not being generally known to other persons who could obtain economic value from their disclosure or use.

49.     By virtue of his prior employment with Personalities and, pursuant to the ITSA, Defendant is under a continuing duty to maintain the confidentiality of Personalities' Trade Secrets.

50.     Despite the statutory obligation to maintain the confidentiality of such trade secrets, Defendant misappropriated such trade secrets in violation of the ITSA.

51.     Defendant's misappropriation was willful and malicious.

52.     Plaintiff has no adequate remedy at law to protect against the illegal misappropriation and use of its trade secrets by Defendant.  Injunctive relief is, therefore, necessary and appropriate to restrain the illegal misappropriation and use of such information pursuant to section 3 of the ITSA.  *See* 765 ILCS 1065/3.

53.     Unless Defendant is restrained and enjoined from using the subject confidential, proprietary and trade secret information, Plaintiff will suffer immediate and irreparable injury in that Defendant will exploit his access to Plaintiff's trade secrets.

**COUNT III**
**VIOLATION OF THE LANHAM ACT (15 USC §1125)**

54.     Personalities repeats and reallege the allegations of paragraphs 1 through 53 above, inclusive, as though fully set forth herein

55.     Defendant published the Personalities' Copyrighted Photos with the hashtag "#personalities" on Defendant's web site, and other social media accounts in connection with his competing DJ services.

56.     Defendant's use of the hashtag "#personalities" is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's DJ services, or commercial activities by Plaintiff.

57.     These false and/or misleading and representations of fact were likely to cause and/or did in fact cause confusion, mistake, and deception as to Defendant's affiliation, connection, or association with or sponsorship or approval by Personalities.  Defendant made these false and/or misleading descriptions and representations of fact willfully.

58.     As a result and/or consequence of Defendant's false and/or misleading descriptions and representations of fact, Personalities has suffered, is presently suffering, and/or will in the future suffer substantial harm and damage, including but not limited to injury to his good will and business reputation, injury to the value of his business ventures, loss of investors, loss of profits, and/or loss of revenue.  In addition, as a result and/or consequence of Defendant's false and/or misleading descriptions and representations of fact, Personalities has suffered, is presently suffering, and/or will in the future suffer irreparable harm for which there is no adequate remedy at law.

59.     Pursuant to 15 U.S.C. § 1117(a), Personalities is entitled to recover Defendant's profits, the damages sustained by Personalities, the costs of this action, treble damages, an

enhanced sum in lieu of Defendant's profits, and, because Defendant's pattern of willful conduct makes this an exceptional case, reasonable attorney's fees.  In addition, Personalities is entitled to such injunctive relief as the Court may find just to prevent harm for which there is no adequate remedy at law.

**COUNT IV**
**VIOLATION OF THE ILLINOIS**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS 510/1, *et seq.*)**

60.     Plaintiff repeat and reallege the allegations of paragraphs 1 through 59 above, inclusive, as though fully set forth herein.

61.     Defendant has engaged in deceptive trade practice in the course of his business in violation of 815 ICLS 510/2(a) because Defendant (1) passes off competing DJ services as those of Plaintiff; (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of DJ services; and (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Plaintiff.

62.     As a direct and proximate result of the aforesaid willful acts, practices, and conduct, Plaintiff has been or is likely to be substantially injured in its business, resulting in lost revenues and profits, and diminished goodwill and reputation.

63.     Because of Defendant's willfully deceptive business practices, Plaintiff is entitled to appropriate injunctive relief and attorneys' fees and costs.

**COUNT V**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *et seq.*)**

64.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 63 above, inclusive, as though fully set forth herein.

65. Defendant's actions constitute deceptive trade practices in violation of the CFDBPA, 815 ILCS 505, *et seq*., in that Defendant has made false and misleading representations of fact concerning Plaintiff's services, with the intent that others would rely on such false representations of fact.

66. Defendant intended that the public rely upon the concealment, suppression or omission of such material fact.

67. The public is likely to be substantially damaged because of Defendant's deceptive trade practices which also proximately cause Plaintiff damages.

68. Defendant's deception occurred in commerce.

## Jury Demand

Plaintiff Personalities hereby demands a jury trial of all issues triable by jury.

## Prayer For Relief

WHEREFORE, Personalities demands judgment in its favor and against Defendant for Counts I-V above and award it relief including, but not limited to, an Order:

a. Temporarily restraining and preliminarily and permanently enjoining Defendant, his agents, representatives, heirs, assigns, affiliates, and all persons active in concert or participation with him from:

(1) Infringing Personalities' copyrighted works;

(2) Using or otherwise exploiting Personalities' trade secrets;

(3) Encouraging or facilitating others to infringe Personalities' copyrighted works;

(4) Encouraging or facilitating others to use or otherwise exploit Personalities' trade secrets;

(5) Making any representation or implication of affiliation, connection, or association with or sponsorship or approval by Personalities; and

      (6)     Contacting, soliciting, or contracting with any of Personalities' current or former customers in the fashion industry as reflected on Personalities' confidential client list;

b.     Requiring Defendant to provide Personalities with an accounting of any and all revenues received from any of Personalities' current or former customers in the fashion industry as reflected on Personalities' confidential client list;

c.     Requiring Defendant to provide Personalities with a list of any of Personalities' current or former customers in the fashion industry (as reflected on Personalities' confidential client list) that Defendant contacted since leaving the employ of Personalities;

d.     Awarding Personalities actual or statutory damages for infringement and willful infringement under 17 U.S.C. § 504, as appropriate;

e.     Awarding Personalities compensatory damages it has suffered in an amount to be proven at trial;

f.     Awarding Personalities punitive and/or exemplary damages for all claims for which such damages are authorized;

g.     Requiring Defendant to disgorge all improper benefits, profits, and/or gains;

h.     Awarding Personalities its costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117(a) and other applicable laws.

i.     Awarding pre- and post-judgment interest at the maximum legal rate and costs;

j.     Awarding such other and further relief as this Court deems just and proper.


Dated:  February 19, 2015                 Respectfully Submitted,
                                     Lou Loiben's Personalities, Inc.

                                     By:   /s/ Stephen J. Rosenfeld
                                       One of its attorneys

Stephen J. Rosenfeld (ARDC #6183729)
Rebecca A. Edwards (ARDC #6284786)
MANDELL MENKES LLC
1 N. Franklin Street, Ste. 3600
Chicago, IL  60606
Tel:  (312) 251-1000
E-mail:  srosenfeld@mandellmenkes.com
E-mail:  redwards@mandellmenkes.com