UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOU LOIBEN'S PERSONALITIES, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 15 CV 1511 |
| AKIB KHANANI (a/k/a "DJ Akib", a/k/a "DJ Akib Entertainment") | ) |
| Defendant. | ) |

## DECLARATION OF LOUIS J. LOIBEN

I, Louis J. Loiben, declare on oath that I have personal knowledge of the facts set forth below, and, if called as a witness in this matter, would testify to the following:

1. Since 1995, I have been sole owner and shareholder of Lou Loiben's Personalities, Inc. ("Personalities").

2. Personalities is a disc jockey ("DJ") entertainment company that provides high-end entertainment for its clients. It specializes in developing custom productions for social, school, corporate, fundraising and fashion events.

3. Personalities also produces music and music videos for its corporate clients.

4. Personalities is a small, individually-owned, boutique company that has been a leader in the high-end DJ entertainment business for both corporate and private events since 1995. It hosts hundreds of events each year for its clients.

5. In 2010, Personalities commenced a focused effort to enter the lucrative fashion-show business in Chicago. Fashion shows were important to Personalities not only because of their profitability but also because they typically attract Personalities' target clientele.

6. Personalities initially concentrated on a appealing to a limited number of its corporate clients in the fashion industry, such as Macy's.

7. Although Personalities was successful in attaining a toehold in the fashion-show market, the market was difficult to enter because of the unique and significant eccentricities and requirements of fashion show producers, clothing designers, modeling agencies, and fashion houses.

8. Knowing and being able to cater to all of these specialized needs was key to capturing and maintaining business in the Chicago fashion-show market.

9. For that reason, the Chicago fashion-show industry was dominated for more than thirty years by a single company: Avmar, Inc. d/b/a/ Sound Machine ("Sound Machine").

10. In May of 2012, Personalities acquired Sound Machine, including all of its intellectual property.

11. In connection with the acquisition, Personalities obtained, inter alia, the following trade secrets that Sound Machine developed over thirty years of effort and that is crucial to maintaining dominance in the Chicago fashion-show industry:

   a. current and past Sound Machine client lists and profiles;

   b. preferred music and playlists for such clients;

   c. other specialized requirements of those clients (e.g., preferred set-ups, equipment, etc.);

   d. scripts for past shows; and

   e. financial information about the clients, including past contracts.

12. Personalities kept these trade secrets confidential within its organization, providing such information to employees on a need-to-know basis and emphasizing to its employees who obtained any such information the importance of keeping it confidential. All of the information was kept on a password-protected computer system.

13. From May 2012 through the beginning of February 2015, Personalities maintained Sound Machine's control over the Chicago fashion-show industry.

14. I initially maintained the trade-secret information exclusively within my control.

15. On February 4, 2011, Defendant became an employee of Personalities.

16. Beginning in mid-2012, I appointed Defendant as the primary DJ to lead Personalities' fashion-show business. In that capacity, I divulged to Defendant certain Sound Machine clients, their preferred music and playlists, other specialized requirements of those clients, scripts for past shows for those clients, client budgets and bidding techniques, and Sound Machine's advanced music theory for fashion shows.

17. I advised Defendant that such information was confidential and should not be disclosed to anyone because it represented business secrets that the company expended significant time, money and effort to develop. Defendant agreed to maintain the secrecy of the information.

18. In addition to Defendant's primary DJ responsibilities, Personalities tasked Defendant with taking photographs and videos at the fashion events to promote Personalities on the Internet and through social media sites.

19. At the time Personalities hired Defendant, Defendant did not have any contacts or experience in the fashion industry.

20. Fashion shows occur in Chicago during two distinct timeframes: the Spring fashion-show season begins in mid-February and runs through May; the Fall season begins in August and runs through November.

21. At the beginning of February 2015, Personalities fashion-show clients already had advised Personalities of their Spring 2015 show dates but, as was customary in past years, had not yet formally contracted with Personalities for those dates.

22. On February 4, 2015, Defendant sent me a text resigning from his position without notice. Defendant stated that he decided to leave Personalities and "branch off

and do [his] own thing. . . . " He further stated that "it's been a pleasure working with [Personalities] over the past few years" and that "[he has] learned a lot from" his association with Personalities.

23. Immediately thereafter, Defendant began contacting Personalities' clients and informing them that they should book their fashion shows directly through him rather than booking through Personalities.

24. Defendant even currently touts Macy's – one of Personalities' clients – as one of his corporate clients on his website, located at http://www.djakib.com/.

25. Defendant used Personalities' confidential client list to contact the fashion-show producers and used his knowledge of Personalities' other trade secrets to sell his ability to service these clients.

26. To promote his experience in the fashion-show industry, Defendant has posted on his website (www.djakibentertainment.com) and other social media sites (including Facebook and Instagram) copyrighted photographs and videos from events that he worked as an employee of Personalities, including photos from events produced for Macy's, Fashion Outlets of Chicago, the Debi awards, the Gold Coast fashion show, and various Merchandise Mart (MMPI) shows (the "Personalities' Copyrighted Photos").

27. Personalities holds the copyright to the Personalities' Copyrighted Photos.

28. On February 18, 2015, Personalities filed with the United States Copyright Office an application to register the copyright in the Personalities' Copyrighted Photos, Case No. 1-2152634477.

29. Personalities has never given Defendant permission to use the Personalities' Copyrighted Photos.

30. Defendant also recently posted the Personalities' Copyrighted Photos on various web sites and social media accounts with the hashtag #personalities and #personalitiesinc, making false and/or misleading representations to the fashion-show

4

producers and others regarding his continued affiliation with Personalities or sponsorship or approval by Personalities.

31. Personalities faces devastating financial ruin and the loss of its long-standing clients if Defendant is permitted to continue misappropriating Personalities' copyrights and trade secrets and trade off Personalities' good name.

32. Personalities further faces irreversible reputational harm in the fashion industry if Defendant continues to misappropriate such intellectual property and intangible assets.

I declare under the penalty of perjury, under the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Dated: February 18, 2015

_____

Louis J. Loiben